1-1415 Sarah Vitloch Roque v. Metrohealth, Inc. At this time, would Attorney Marchand please introduce himself on the record to begin? Good morning, Your Honors. My name is Attorney Jorge Marchand. I represent Appellant Sarah Villoch. Thank you. Please proceed. Thank you to you all for giving me this opportunity to argue the case on behalf of my client. Are you going to save any time for rebuttal? No, Your Honor. Okay. Let's begin then. Yes. I think that from the record, it's clear that the main issue here is the letter of November 3rd, 2017. The letter that the employer decided to give my client unpaid leave for three months. Evidently, if you look at the record, the employer characterizes that letter one way. District Court characterizes that letter one way. Appellant characterizes the letter the other way. Can I ask you a question just to clarify? Under the ADA, the letter and the unpaid leave is your adverse employment action. Under the ADEA, what is it that you allege the adverse employment action is? Okay. Evidently, my client had a problem with this. Her name is the head of the medical records department. Basically, her litigation from 2014 until the day of her adverse, let's call it adverse action. We call it termination, but for purposes of this hearing, let's call it adverse action. She has a pattern of harassing her and wanting her to get rid of her because of her age. I even included, as part of the record, a sworn statement, as part of the opposition to the motion for summary judgment, from her direct supervisor, Mildred Miro, who clearly stated that Mrs. Gotay told her, I want to get rid of her because she's old. So it's workplace harassment? Correct. Okay. That it finished, it shows discrimination animus towards my client. Even though the district court didn't make any findings of fact, I think there are a couple of things that I think are clear from the record. First of all, at some moment after Maria, Hurricane Maria. Yeah, Hurricane Maria. I'm sorry. Something we hear, we assume, everybody knows what we're referring to, but it's clear. It's Hurricane Maria. After Hurricane Maria, evidently the hospital suffered some damages. One of them was that, I call it, some records went away in the street. And a part of the process of repairing that, they have to get them all together and organize them. And one of the things my client did was, as part of the medical records department, go to a room and make a list of all the records as part of the claim to the insurance company. And at some moment she did that. And obviously the papers were humid. You know, the state of those documents were very humid. And the place where she was. She gets a medical letter. Yeah. And that resulted in the medical letter asking the employer to make a result of accumulation. I think it's important what the medical certificate says and the reaction from the employer. In that regard, okay. It says, the accumulation consists of avoiding smoke, vapors, objectionable odors, humid areas which can unleash the compliance of your formulary condition. Humid areas. When she requested that, the employer legitimately asked her, give me, you have to fill out some forms. She did. They brought out the forms. They never met with my client. On November 3rd, they issued a letter. I think it's important to read what the employer said in the letter. Not what the district court or the employer interpretation of the letter. Because I think the letter is very clear. It says, as a result of this, the medical records are not exempt from humidity. Not even as of this date. For the same reason, after evaluating the accumulation requested together with the Director of Health Information Management Department, in addition to the meeting with you, we've met with you. That never happened. We indicate that in the location where you will book it at present, your tax inevitably implied contacts with humidity. They don't talk about smoke, vapors, objectionable odors. Just humidity. At that moment, they tell her, ah, you go and go in a lease for three months. The problem with that, the employer says, that's not an adverse action because that's a reasonable accommodation. Because I don't have a place to put you, so I'm going to take you for an unpaid leave. And if you, the reason they do that is clear. Because they can't raise the undue hardship argument because they don't have the evidence. Because if you look at the record, the document to support the motion for summary adjustment, there weren't any evidence besides this letter to support what is asserted here. So they say an unpaid leave asset is a reasonable accommodation. And then on their motion for summary adjustment, they cite case law. I really don't understand. They're saying that after Hurricane Maria, everything was wet, damp, humid. She deals with medical records, all of which are wet, damp, humid, and moldy. And that if she's going to continue to do her job dealing with those records, there's no accommodation because the records are what they are. So what is the flaw in their logic? Not necessarily, because one thing is— What accommodation could they have given her if she continued to do her job, unless your argument is that they should have moved her to a different department? No, that's not my argument. Medical records is a big department. One thing is to deal with the records regarding what happened with Maria. Another thing is working other areas of the medical department. I'm sorry, working what? Other areas in the medical records department. That's the issue. That's what's not clear from the letter. Let me ask, where in the record have you presented any options that are in the record or other areas or possible jobs she could have done? I know in your brief you have a very generalized description, but, for example, you're not pointing out—and this is just—I'm making this up, but deposition of Supervisor Fernandez, who said that he could have accommodated her in this place where they are doing computer work or something, there's no humidity. There's nothing in the record suggesting that. Sure, but— Where have you created the genuine issue of fact? Yeah, the issue—no, because the issue of fact—my issue of fact is the following. They say—because they say this is a reasonable accommodation. The problem is that in your case law, it says that unpaid leave absent could be a reasonable accommodation, but in all those cases, it's the employee who requests the leave of absence as an accommodation. But here the employee is presenting a doctor's certificate, which, you know, one could argue it's—you know, she can't work there. Can't work around mold and humidity. Where's the evidence in the record to state that? That's what they say. This is about less than a month and a half after the hurricane hit. There's still, like, no power around. Yeah, I know. You know, I'll take judicial—I guess we can take judicial notice. The hurricane hit, like, September 20th or something like that. So we're not talking, like, three years later, everything's back to normal. This is, you know, the time where probably every—you know, where's the issue? It's your burden to show us there's an issue of fact that she could have been accommodated elsewhere. And the other thing is that the letter says if you have another doctor's certificate, you can come back. We'll bring you back sooner. Okay. The issue here is precisely because they don't say—what the letter says, you're going to deal with some documents that are human. Okay? What my client asked the doctor is you can be in those areas. It's not the same because I think exposure to some kind of humidity is going to happen in the work site, especially if we live in Puerto Rico. So why, as of the record, it was my issue that I raised in my appeal and in opposition is why don't discuss that with my client as part of the interactive process? Okay, I know that in this case law, in this first circuit, that's not a requirement. But depending on the circumstances, that's why the case law says we're going to see it case by case. But this is what happens. My client wants to work. He says, I have this pulmonary condition. I have this problem that I can work in these extreme areas. But they're saying that there's no place in the hospital that could have accommodated her condition because everything was wet and moldy. And you haven't pointed out anything in the record that suggests that there was some accommodation that would have been reasonable for her. Like Judge Helpe said, you don't say that she could have gone and worked with the computer records. The thing is, the burden of that is on the employer because if that's the premise, it's an undue hardship. But they give a flat-out statement. There's nothing here. And there's nothing in the record that says that's not correct. There's nothing on the record that says that's correct. You only have the letter. But then, again, we're at the summary judgment stage. So then you have to create a genuine issue of fact as to the accuracy of that letter. And, again, what the law requires is a reasonable accommodation. Whether your client likes it, whether we like it, you know, the standard is a reasonable accommodation. Because the issue of fact is precisely that my client says, I want to work. But I want to work doesn't mean there's a condition that will allow me to work. There's a condition at the hospital that will allow me to work. That's the issue. That's why the interactive process is relevant here. That's why the interactive process is relevant here. That didn't happen. Because if that happens, they say, because you request me a special area. My only solution is to give you an unpaid leave of access. Therefore, under your case law, in that moment, the employer has the obligation to meet with the employee and tell her these are the alternatives. What do you want to do? They're telling her there's no alternatives. We have to put you on unpaid leave. And your client or somebody else, there's no evidence in the record. Like somebody could have said in the computer room, in X division, she can perform this work. And these are the documents that are dried. She has to enter them in the computer system. But there's nothing that the record is lacking. So that's why. No, it's the different thing. That's why I'm saying it's very important. When there are no alternatives, that's undue hardship defense. And they have the obligation to present evidence to support that. When there are alternatives, because they're saying the motion for summary judgment, there was an alternative. What alternatives are there in the record that we can see that there were alternatives? Yeah, they tell her you have to go on paid leave. So at that moment, I think good faith tells you you go to the employee and tells her these are your options. You either work in the unit areas or you go on paid leave. But you don't impose unilaterally that decision. But the doctor's statement is saying she can't work in human areas. No, avoid. It doesn't say can't work. Avoid. It's not the same. But at the end of the day, it's her decision to work. From an employer's perspective, if you get a medical statement you can avoid, you're not going to put somebody there to die from fungus infection or mold. I completely understand that. But at the end of the day, that's why that element of the interactive process here is warranted. I know it's not a requirement, but usually it's not a requirement when it's clear. I don't think that was clear here. You go and you determine, because you said human areas. It gives you a whole bunch of possibilities, this medical certificate. It tells you avoid small vapors, objects, and others. What they say, you're going to be exposed to human documents. That's what the letter says. So why don't you interact with the employee as the law provides and say, okay, these are your options. You either go to a paid leave or you work knowing that you will be exposed to some of the human areas. Because based on the record, eventually they reinstate her after the meeting, after the hearing on the anti-discrimination unit. So I think there's an issue of fact. I think that you really have to decide what was the nature of that communication based on all the circumstances that happened at that moment. Because I don't think the court is in position, the district court, is in position of, in face value, believing what the letter says. Because the burden is still on the employer in the motion for someone just being faced. Because I don't have a fact to contradict, because there's no fact. Let me ask any other questions. I have one last question, and let me go to the ADA claim. You continue to mention in your brief there's younger employees who have been treated better, but I don't see any pinpointing or any – so if you could briefly, 30 seconds, tell us where you presented evidence of genuine issue of material fact as to younger employees being treated differently. It's even on the motion for somebody just going for an employer. Based on the complaint, there was an allegation about another employee, younger, her name. Okay, but that's an allegation. No, no. As part of the – and it's in the record, the letter, where they conceded her accommodation to not work stairs because she was pregnant. If I'm not mistaken, she requested an accommodation. Yeah, but how is she similarly situated to your client? It's not the same. I can't concede that. It's not exactly the same. But the way they addressed her request and accommodation was different from my client's. Okay. Thank you, Counsel. Yeah. Let's hear, then, from Capelli's counsel. Good morning. My name is Attorney Lourisco from the law firm Pizarra-Gonzalez, and we represent Mental Health, Inc., doing business as Hospital Metropolitano. May it please the Court? Please go ahead. Your Honors, in this case, the hospital seeks that this Court affirm the judgment issued by the Honorable District Court for the District of Puerto Rico, whereby it dismissed the complaint filed by Appellant against the hospital because she failed to establish a prima facie case of discrimination under the ADA and the ADEA and because she also failed to establish a prima facie case of retaliation under the Puerto Rico Anti-Retaliation Statute, Puerto Rico Act Number 115 of 1991. Furthermore, the hospital submits that Appellant, that the hospital, that even if we were to assume that the Appellant established a prima facie case under any theory of liability, the hospital set forth a legitimate non-discriminatory and non-retaliatory reason for the actions it took in regards to Appellant. Now, in this case, it's very important to see the facts, how they played out and how they were proven by the hospital before the District Court in the summary judgment stage. Appellant, she worked in the Information Management Department in the hospital. In September 2017, Hurricane Maria hit Puerto Rico, which caused devastation across the island. Unfortunately, the hospital was not immune to the damage caused, which forced the hospital to move the department from where it was located to another area within the hospital as the department had been destroyed as a result of the hurricane. Also, the documents that were kept... Why was the hospital's decision not to engage in an interactive process not unreasonable? Well, Your Honor, the hospital did engage in an interactive process. When the hospital received the medical certificate demanding the reasonable accommodation, the hospital sought additional information from the Appellant, and it requested that the doctor fill out additional information so it could better understand the condition that the Appellant suffered. What happened at that moment is that upon reading the doctor's note and the information filled out by the doctor, the hospital discovered that there was no possible accommodation that could be provided to the Appellant within the hospital given the circumstances that existed at that time, which is what we have to look at when we're looking at reasonable accommodation cases under this circuit, the facts that existed at the time of the reasonable accommodation. Since the damage that the hospital suffered as a result of Hurricane Maria caused the medical records in the department to get wet, humid, and grow mold, and these are medical records that the Appellant worked with, and the hurricane also caused the hospital to have humidity within it, specifically where the department was relocated. By Appellant's own deposition testimony, it was humid, it had water damage in the ceiling tiles, and it was not in optimal conditions. When the hospital reviewed that medical information with the facts that existed in the hospital at that time, it determined it could not provide a reasonable accommodation with what the doctor requested. That's why no further interactive process was necessary, and that's when the hospital then determined that an unpaid leave for up to 90 days would be given to the Appellant unless her conditions changed, which the hospital notified her and several patients, the hospital notified her that when it notified the unpaid leave for 90 days, the hospital informed her that if her condition changed, she could submit a medical certificate so the hospital would re-evaluate her condition. This was in November 2017. In December 2017, the hospital contacted the Appellant to see how she was doing, and once more reiterated, if your condition changes, please let us know, submit a medical certificate, and we will re-evaluate your condition and your leave. The fact that you were on a 90-day unpaid leave does not mean that you cannot return earlier, and this was once again repeated to her when the Appellant returned to the hospital on February 1st. When she reported for work, she was informed she had to submit a medical certificate allowing her to return to work since the hospital, even at that time in February, was not free from all humidity, so the hospital did engage in an interactive process with the Appellant. So the case law that springs to my mind usually involves an interactive process directly with the Complainant, but you're saying that this also is sufficient activity on the part of the hospital to be considered interactive, part of the interactive process. Well, yes, Your Honor. There is no hardline rule as to what constitutes an interactive process, although on some occasions interactive process includes a conversation with the employee to see how the employee could accommodate the employee within the place of employment. In this case, after the hospital obtained the medical forms from the doctor, it was apparent there was no further discussion necessary, as the employer could not accommodate Appellant within the hospital, given the circumstances that existed at that time. And it's important to point out that Appellant is raising a failure to accommodate claim, and she alleges that the hospital's failure to engage in interactive process has some culpability to it. However, to the extent that the hospital provided a reasonable accommodation with the information it had at hand, and to this day that Appellant has not pointed out to any other accommodation that could have been provided to her, then there's no need to discuss the interactive process then, because it is plaintiff's burden, or Appellant's burden at this stage, to provide a specific example of how she could have been accommodated, and she has not carried her burden in that regard, Your Honor. Regarding the ADE claim, Appellant claims that she was submitted to a hostile work environment, and she makes reference to two specific sworn statement testimonies. However, those sworn testimonies from witnesses do not contain factual allegations of any type of harassment that she may have endured while she worked in the hospital. They're all factual, sorry, in nature, and as such, do not provide, do not comply with the requisites that this court and the district court had to apply when considering an opposition for summary judgment. Those sworn statements state things such as, I saw the director harass her, the director told me that she wanted to get rid of her because of her age. However, that does not translate that any actions actually took place towards the Appellant, so Appellant has not carried her burden in that regard. And as to the Puerto Rico retaliation statute, Appellant has to prove that she engaged in protective activity, and that she suffered an adverse employment action from the hospital, and that both are culturally related. Even though we may assume without conceding that Appellant engaged in a conservative activity, she has not demonstrated that she suffered an adverse employment action. Appellant refers to three separate actions as to her adverse employment action. The first one is that the director instructed Appellant's supervisors to mistreat her. That is not enough, because we do not receive any facts that the supervisor actually mistreated the Appellant. The second one is that Appellant alleges that no work was given to her once she returned from the unpaid leave. However, Appellant does not put the court in position to consider whether she did in fact receive this work. We are not notified of what work she received prior to the unpaid leave, and what type of work she received after the unpaid leave. So it is compulsory in nature and should not be considered. And regarding the third alleged adverse employment action is that when she returned to the hospital on February 1, 2018, the hospital did not allow her back until February 6, 2018. However, this is not an adverse employment action caused by the employer. This was an action which is a natural consequence of Appellant's failure to go to her doctor since October 2017 to obtain a new medical certificate. As a result, Appellant's retaliation claim under the Puerto Rican Retaliation Statute fails. I would like to add something else regarding the ADA claim that Appellant alleges in her brief. Our position, the hospital's position, is that the leave that was provided to her, the unpaid leave for 90 days, was a reasonable accommodation, and this circuit recognizes unpaid leave as reasonable accommodation. However, even if this court were to consider that the unpaid leave was not a reasonable accommodation and was instead an adverse employment action, the hospital submits that it had a legitimate, non-discriminatory reason to place her on unpaid leave, which Appellant has not refuted with specific facts. And that is precisely the doctor's note of November 2017 establishes that Appellant could not work in her place of employment because she could not be exposed to humidity. And for those reasons, Your Honor, we request that the judgment be affirmed. Thank you very much. Thank you very much, counsel. At this time, court is adjourned for today, and we'll resume tomorrow at 9.30 a.m. All rise.